James André Boles, Esq.
Nevada Bar No. 3368
411 Mill Street
Reno, Nevada 89502
775-329-1544
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MARIE GILBERT, <br><br> Plaintiff, <br><br> vs. <br><br> STACEY TING SENINI, individually and in her official capacity as Principal at Libby Booth School; BARBARA MCLAURY, individually and in her official capacity as School Director; LISA NOONAN, individually and in her official capacity as Superintendent of Elementary Education for Washoe County School District; PAUL DUGAN, as Superintendent of Schools for Washoe County School District; WASHOE COUNTY SCHOOL DISTRICT, a Political Subdivision of the State of Nevada. <br><br> Defendants. | Case No.3:09-cv-00269-LRH-RJJ <br><br> **AMENDED COMPLAINT** |

Plaintiff, for her complaint against the defendants, and each of them, alleges, avers, and complains as follows:

## JURISDICTION

1.  This Court has subject matter jurisdiction over this action in that this is a suit in equity authorized and instituted pursuant to the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 621, 42 U,S,C , §1983 & §1988 *et seq.*  Such jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by 29 U.S.C. 621, *et seq.*, providing for injunctive and other relief against age discrimination and violation of equal protection laws.

2.  Venue is proper in this district, the unofficial Northern Division of this district,

1

because the Defendants are subject to personal jurisdiction here, and the claims arose here.

3. All conditions precedent to jurisdiction under 29 U.S.C. § 626(e) have occurred or have been complied with to wit: A charge of employment discrimination was filed with the Equal Employment Opportunity Commission within 180 days of the commission of the unfair employment practice.  Plaintiff received notification of her right to sue for the ADEA claims via letter from the Equal Employment Opportunity Commission dated September 21, 2007.  This complaint was filed within ninety (90) days of receipt of the first notification.  Copies of said notices are attached hereto.

**NATURE OF CASE**

4. This is an action for relief in damages and for attorney's fees and costs and is brought on behalf of Plaintiff identified hereinabove on grounds of age discrimination in the workplace and violation of the equal protection laws in the United States Constitution..

**STATEMENT OF THE CASE**

**(Parties)**

5. Plaintiff , Marie Gilbert ("Plaintiff"), is a 58 year old female and a citizen of the United States of America and the State of Nevada, residing in the county of Washoe.

6. The first named defendant, Stacey Ting Senini ("Ting Senini"), is sued individually and in her official capacity as Principal of Libby Booth Elementary School and was at all times relevant hereto Plaintiff's immediate supervisor.

7. The second named Defendant, Barbara McLaury ("McLaury") is sued individually and in her official capacity as Senior Director, Title I & Area V - Elem Ed for Washoe County School District of and was at all ties relevant hereto Defendant Ting Senini's direct supervisor.

8. The third  named Defendant, Lisa Noonan is sued individually and in her official capacity as Superintendent of Elementary Ed. for Washoe County  School District and was at all times relevant hereto Defendants Ting Senini's and McLaury's direct supervisor.

9. The fourth named Defendant, Paul Dugan (Dugan) is sued individually and in his official capacity as Superintendent of Schools for Washoe County School District and was at all times relevant hereto, Defendants Ting Senini's, Noonan's and McLaury's direct supervisor.

10. The fifth named Defendant, the County of Washoe, ex rel, the Washoe County School

1  District ("WCSD") is brought forth as a defendant in this action out of its relationship as the
2  employer of the Plaintiff.

**(Facts of the Case)**

4  11.    Plaintiff was an elementary school teacher and was been employed with WCSD since August 1996 in that capacity. She spent the last twelve years teaching kindergarten through third grade at Libby Booth Elementary School. In 2002-2003, WCSD entered into a program of forcing older teachers into retiring, quitting or facing termination.

8  12.    During her tenure, Plaintiff's career has been without incident until 2003 when a pattern of harassment began by then Principal Patti Bernard.  Up until 2002-2003 her evaluations had all been satisfactory.

11  13.    During the 2002-2003 school year Plaintiff taught First grade at Libby Booth Elementary School with her teaching partner Cheryl Doetch.

13  14.    At the last moment of the 2002-2003 year, then principal Bernard told Plaintiff that she did not have a position for her in first grade.  This was not true, there was a first grade position available.

16  15.    Bernard offered to transfer Plaintiff to Bernice Matthews Elementary School to teach third grade.

18  16.    Plaintiff resisted the involuntary transfer and contacted her labor union, Washoe Education Association, who contacted Bernard on behalf of Plaintiff.

20  17.    Bernard then recanted and Plaintiff remained at Libby Booth, but was not able to return to her First grade class.

22  18.    During the 2003-2004 school year a pattern of harassment began by Bernard.  Plaintiff was called in several times by Bernard, on June 5, 2004, she was told that WEA's Virginia Doran knew about the involuntary transfer.

25  19.    During Third Grade Level Teacher's Meeting, Bernard made remarks that Marie needs really good help in her classroom, inferring incompetency, and gave Gilbert low evaluations for the year.

28  20.    Ting Senini became Principal at Libby Booth for the 2004-2005 school year.  Gilbert

1  was written up for minor things. After a series of minor complaints in which Gilbert was presumed
2  guilty, Plaintiff was placed on special probation.

3      21.    During the 2005-2006, for the first time in her employment, Plaintiff received an
4  Unsatisfactory Performance Evaluation. During that time Plaintiff was placed on a "Track III
5  Program", which was special probation disguised as "Focused Assistance Plan". This placed Plaintiff
6  under hyper-scrutiny. Under Track III Plaintiff was regularly evaluated by Ting Senini and McLaury
7  with both of them giving conflicting evaluations.

8      22.    During 2005-2007 Gilbert had been held in meetings after contractual hours. Ting
9  Senini on several occasions interrupted Plaintiff's instruction to have her attend to administrative
10 tasks and then criticized her in evaluations for losing instructional time.

11     23.    On June 14, 2007 Ting Senini and McLaury issued a Letter of Admonition to Plaintiff
12 with a laundry list of minor infractions, none of which were founded or of a serious nature.

13     24.    This was protested by Plaintiff and upheld by Noonan. Plaintiff was placed on
14 Administrative leave in October 2007. At a Due Process Hearing on December 17, 2007, Plaintiff
15 was charged with offenses intended to give rise to her termination.

16     25.    Plaintiff was replaced by a younger teacher and was repeatedly told that she was not
17 keeping up with changes and new programs. The changes were never properly taught, supervised or
18 explained. All of the mistreatment described above was pursuant to a policy of the defendant School
19 District which favored younger employees. The defendants, and each of them treated the plaintiff
20 less favorably based on her age, i.e., over forty.

21     26.    After termination, Plaintiff went to arbitration.

22     27.    On March 12, 2009, the Arbitrator (See Exhibit A. In the Matter of An arbitration
23 Between Marie Gilbert and Washoe County School District - NB3025 - Award & Opinion) found as
24 follows:

25     *"1.    The District did not have just cause to terminate Grievant.*
26     *2.    The District will make Grievant whole for all of her lost wages, benefits, and*
27     *emoluments of employment (including retirement benefits that would have*
28     *been earned had she been continuously employed) from the time she was*

*suspended without pay to the present.*

3. *While Grievant is to be restored to the payroll immediately, the District may require a fitness for duty examination before she is returned to actual work.*

4. *The District is not required to return Grievant to a classroom teaching position, but can utilize her in any way consistent with her credentials.*

5. *The District may not place Grievant under the direct or indirect supervision of Ms. Ting-Senini.*

6. *In accordance with the stipulation of the parties, I retain jurisdiction over the implementation of this remedy."*

28. The Arbitrator also found as follows:

"I find *the District did not have just cause to terminate Grievant because of her conduct. I make this finding for two reasons. First, any evidence of misconduct that relies on Ms. Ting-Senini is not reliable. She was not a credible witness. Her evasive and inconsistent explanation of how she did not change Grievant from a Major evaluation to a Track III has already been discussed. In other testimony she invented facts. She testified to giving Grievant a "Letter of Direction" because another teacher, Ms. Gladding, told her Grievant had copied her student files. (Tr. 38:8-12) Grievant explained she did it because she did not know how to do certain student assessments. (Tr.183:20-21) On cross-examination, when asked if she knew there was "a problem between Mrs. Gladding and Mrs. Gilbert;" Ms. Ting-Senini replied "The first problem that occurred, Mr. Boles, was when Grievant was found in her files copying her – her personal files as well as student files. (Tr.182:3-183:3) Ms. Ting-Senini's response is the first time there is an assertion Grievant copied Mrs. Gladding's personal files. It is unlikely the "Letter of Direction" would have ignored behavior as egregious as copying another teacher's personal files. Ms. Ting-Senini appears to have invented this new piece of "unprofessional conduct" at the hearing. Ms. Ting-Senini invented other "unprofessional conduct," as well. The Admonition of March 27, 2006, alleging behavior evidencing a "lack of respect," appears to be*

5

*largely invented to bolster Ms. Ting-Senini's questionable decision to continue Grievant on Track III.[23] Moreover, in her 2006-06 evaluation of Grievant, Ms. Ting-Senini deliberately misconstrued Component 4d and used that misconstruction to bolster her decision to keep Grievant on Track III. In short, the evidence shows Ms. Ting-Senini was dishonest in her dealings with Grievant, as well as evasive and dishonest at the hearing. Consequently, I decline to rely on her testimony to establish the facts necessary to the District's case.*

*Second, Ms. Ting-Senini appears to have encouraged the other Kindergarten teachers to ostracize Grievant. When Grievant had only been back from her leave a couple of weeks, another Kindergarten teacher complained about Grievant. Ms. Ting-Senini wrote Grievant a memo directing her not to talk to that teacher, except in Ms. Ting-Senini's presence. When there was a minor accident in the doorway between Ms. Zarker and Grievant's room, Ms. Ting-Senini inflated it by calling the police. By Ms. Ting-Senini's actions, Ms. Zarker was encouraged to complaint about Grievant. She later complained to Superintendent Noonan, who formally admonished Grievant on Ms. Zarker's complaint, without hearing from Grievant. (Ex. 72)[24] Ms. Ting-Senini created a hostile and intimidating workplace for Grievant.[25] "*

## FIRST CLAIM FOR RELIEF

### (42 U.S.C. § 2000e-2 and 2000e-3-Age Discrimination)

29. Plaintiff refs to paragraphs 1 through 27 of this complaint and by this reference incorporates herein each, every and all of the averments contained in those paragraphs as though set

---

[23] *The Letter of Admonition purports to provide Grievant's responses. Where she is reported to have "apologized" for "rude" behavior it is impossible to know whether the alleged apology was an admission of any wrongdoing. Other aspects of this Admonition were discussed earlier.*

[24] *Superintendent Noonan justified her decision to conclude her investigation after hearing from only one side by accusing Grievant of incompetence or insubordination in failing to accurately reschedule the original meeting so her lawyer could be present.*

[25] *Some of Grievant's behavior, such as her unwillingness to speak at meetings, or her attempt to let other know of her unfair treatment, was undoubtedly caused by Ms. Ting-Senini's unremitting attacks on Grievant.*

6

forth in full in this place.

30. Defendants Ting Senini, McLaury and Noonan acted willfully and jointly, as a matter of state action and under color of law, in attempting to remove Plaintiff from her employment with the WSDC all because of Plaintiff's age.

31. Defendants' conduct was condoned, adopted and ratified by Dugan.

32. The conduct of the individual defendants and each of them in taking steps to purge the WSDC system of age-fifty-plus personnel actually and proximately contributed to the disciplinary actions taken against Plaintiff in efforts to remove Plaintiff from her employment. The disciplinary actions were either frivolous in nature or conjectured to meet the ends of Ting Senini, McLaury and Noonan's motives to remove Plaintiff from her employment.

33. By conducting themselves as described hereinabove the Defendants, and each of them, attempted to deprive Plaintiff of her continued employment and his entitlement to benefits appurtenant, thereby rendering themselves liable to Plaintiff for past and future general damages, including harm to reputation, humiliation, grief, severe mental and emotional pain, suffering and distress, loss of enjoyment of life, loss of career advancement in education; special damages including lost wages, lost earning capacity, all in sums exceeding $50,000.00 in amount.

**SECOND CLAIM FOR RELIEF**

**(42 U.S.C. §1983 U.S.C. §1988 violating Plaintiff's Equal Protection of the Law)**

34. Plaintiff refers to and by such reference incorporates herein each, every and all averments contained in paragraphs 1-33 hereinabove as though fully set forth at this point.

35. Defendants are liable pursuant to 42 U.S.C. §1983 for the aforementioned damages and attorney's fees and costs pursuant to U.S.C. §1988 for violating Plaintiff's rights to equal protection of the laws.

**THIRD CLAIM FOR RELIEF**

**(Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing)**

36. Plaintiff refers to paragraphs 1 through 35 herein and by this reference incorporate herein each, every and all of the averments contained in those paragraphs as though set forth in full in this place.

7

37. Nevada law implies a covenant of good faith and fair dealing in contracts both generally, and in contracts for employment, specifically, as follows:

> **Obligation of good faith**. Every contract or duty within this chapter imposes an obligation of good faith in its performance or enforcement.
> NRS 104.1203

38. Although NRS 104.1203 is part of this State's Uniform Commercial Code, the Nevada Supreme Court as well as federal courts have extended the section to contracts of employment. Reviewing courts have said the obligation of good faith inheres in *every* contract. *K Mart v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, (1987); *Smith v. Claudianos*, 104 Nev. 67, at 69, 752 P.d. 233 (1988); *Hutton v. General Motors Corp.*, 775 F.Supp. 1373, at 1380, (D. Nev. 1991).

39. The agreement of the plaintiff to perform specified duties for the Washoe County School District in return for specified pay, fringe benefits and protections is a contract of employment.

40. The acts of the defendants committed against the plaintiff were wrongful and without legal cause, in violation of statutory and implied-in-law covenant of good faith and fair dealing between the Washoe County School District on the one hand and the plaintiff on the other.

41. As a direct and proximate result of that conduct, the plaintiff suffered illness, lost earnings, grief and humiliation, and damage to her reputation and career opportunities as alleged herein, all to her special and general damage in an amount to be proved at trial.

**FOURTH CLAIM FOR RELIEF**

**(Emotional Distress)**

42. Plaintiff hereby refers to paragraphs 1 through 41 of this complaint and by this reference incorporates herein each, every and all of the averments contained in those paragraphs as though set forth in full in this place.

43. Defendants Ting Senini, McLaury and Noonan knew, or should have known, that as a result of their actions; the intentional, reckless, extreme and outrageous conduct would cause, and did cause, Plaintiff to suffer severe emotional harm.

44. As a direct and proximate cause of Defendant's negligence, Plaintiff has suffered and is entitled to the aforementioned damages, including punitive damages, and Defendants have subjected

themselves to liability for those damages pursuant to the common law and the statutory law of the State of Nevada.

**PRAYER**

WHEREFORE, Plaintiff prays to this Court:

1. For an award of nominal damages;
2. For an award of general damages in a sum exceeding $50,000.00;
3. For an award of special damages in a sum exceeding $50,000.00;
4. For an award of punitive damages in a sum exceeding $50,000.00;
5. For an award of reasonable attorney's fees and costs of suit; and
6. For injunctive relief and such other and further relief as the Court deems just and proper.

**JURY DEMAND**

YOU, AND EACH OF YOU, WILL PLEASE TAKE NOTICE that Plaintiff Gilbert hereby demands a trial by jury, pursuant to FRCP 38(a), on all issues in the above-entitled matter.

DATED this 22nd day of February, 2010.

_____/s/_____
JAMES ANDRE BOLES, ESQ.
ATTORNEY FOR PLAINTIFF GILBERT

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I hereby certify that I am an employee of the law offices of JAMES ANDRÉ BOLES and that on this date, I served a true and correct copy of the foregoing document by:

_____   Depositing for mailing, in a sealed envelope, U.S. Postage prepaid, at Reno, Nevada.

_____   Reno/Carson Messenger Service.

_____   Personal Delivery.

_____   Facsimile.

__X___   E-Filing

addressed as follows:

C. Robert Cox, Esq.
Debra O. Waggoner, Esq.
MAUPIN, COX & LeGOY
P.O. Box 30,000
Reno, NV   89520

DATED this 22nd day of February, 2010

                                                           /s/ Ursula
                                          Ursula Paredes-Smith